We'll hear argument first in Case 19-896, Johnson v. Arteaga. Mr. Raynor? Mr. Chief Justice, and may it please the Court, Section 1231A.6 states that certain categories of noncitizens, including inadmissible noncitizens like respondent here, quote, may be detained beyond the removal period, end quote. The question presented in this case is whether that language requires that noncitizens detained under Section 1231A.6 be afforded a bond hearing before an immigration judge after six months of detention at which the government bears the burden of proving by clear and convincing evidence that the noncitizen is either a flight risk or a danger to the community. That question answers itself. Respondent implicitly recognizes the absence of any textual support for his position on the question presented. He accordingly focuses on an altogether different issue, namely whether he is entitled to outright release under this Court's decision in Zadvidas because his removal is not reasonably foreseeable. That argument would require modifying the judgment below, which afforded Respondent a bond hearing, not outright release. Because he did not file a cross petition for a writ of certiorari, that argument is not properly presented here, and this Court should reject it for that reason alone. In any event, the argument is mistaken. Unlike in Zadvidas, the detention here, pending a proceeding, is not indefinite. It has a logical termination point, the conclusion of the proceeding. It therefore does not trigger the Zadvidas rule. This Court should reverse the judgment below. Starting with the text, here in order to succeed, Respondent has to both rewrite the substantive standard contained in the statute as well as the procedural standard. The statute enumerates four substantive bases for detention. Well, I mean, as an initial matter, haven't we crossed that bridge in Zadvidas? I don't think so, Mr. Chief Justice. On his Zadvidas argument, it's true the Court held that there's an implicit limitation in the statute that once removal is not reasonably foreseeable, detention isn't authorized. That argument isn't presented here. If the Court wanted to go down that road, it would have to assess whether detention pending a proceeding is indefinite within the meaning of Zadvidas, and Damore answers that question in the negative. But on the argument that responds to the question presented and that was decided below, he wants a bond hearing that affords him release if he's not a flight risk or a danger to the community. And that is a separate substantive standard than was at issue in Zadvidas. My question is, and your objection is in your brief, of course, is that the provisions that are at issue here are not in the statute. And your objection is that we shouldn't read them all in. And I just wonder if we've already decided that the statute can be expanded beyond its plain terms in Zadvidas. I don't think so, Mr. Chief Justice. In Jennings, this Court said that Zadvidas was not a license to read in whatever protections you think are warranted under the Constitution. And I think it's important here to distinguish between the two different parts of his claim. One is procedural. He wants a bond hearing before an immigration judge at which we bear the burden of proof by clear and convincing evidence. Those are procedural protections that he's trying to read into the statute. But the other portion of his claim is substantive. And that doesn't involve reading something into the statute. It involves rewriting the to portability on specified grounds, flight risk or danger. But according to Respondent, the first two bases for detention stop at six months. And only the latter two bases continue to apply after six months. So there's a serious Clark v. Martinez problem with this approach, because he's reading the may be detained language to have different meanings as applies to different categories of noncitizens covered by the statute. So under Respondent's interpretation, may be detained means may be detained for up to six months to the extent you're detained on inadmissibility or deportability grounds. But to the extent you're detained on flight risk or danger grounds, may be detained means may be detained indefinitely as long as you are accorded certain procedural protections. But I guess just following up on what the Chief Justice said, we're dealing here with the same statute as we were dealing with in Zedvitas, a different statute from the ones we were dealing with in Jennings. And Zedvitas says may involves some ambiguity. It gives discretion, but not unlimited discretion. I can see how one might argue with that conclusion in Zedvitas, but that's very clearly what we said in that case. So here, same statute, same word. It seems as though, you know, Zedvitas says there's some ambiguity. There's the discretion is not entirely unlimited. We get to take into account constitutional considerations because of that ambiguity that Zedvitas found. And that's what Mr. Shah is saying we should do here, is, you know, and the reason it applies to only a couple, you know, one category and not the other category is because the Constitution has nothing to say about the other category. So why isn't that right? Zedvitas is distinct in an important respect in that there the court drew its interpretation from the logic of the statute. And it said the purpose of this statute is to ensure that the non-citizen is present at the time of removal. And if removal isn't reasonably foreseeable, the purpose is no longer served. So the statutory authority runs out. So there was a connection there between the interpretation that the court adopted and the internal logic of the statute. And that connection is absent here. No one has attempted to draw a connection between the purpose or the function of the statute and the entire procedural framework that the lower court engrafted onto the statute. Was Zedvitas really limited to that? I mean, Zedvitas first talks about if removal is not reasonably foreseeable, but then Zedvitas goes on. And there is a sentence in Zedvitas that says even if removal is reasonably foreseeable, the court should consider the risk of the aliens committing further crimes. You know, essentially pointing to a factor that's a very common factor in bail hearings. So Zedvitas seems to think of itself as extending beyond that very sort of core purpose of inquiry that you referred to. That second line that you referenced, Justice Kagan, we agree with it. The statute says that danger is a consideration. And so when it said you should consider danger, the court was just reiterating one of the considerations in the statute. And we definitely don't think that that single line from Zedvitas can be read to nullify the other three considerations in the statute. Zedvitas didn't purport to do that. And even if we were to focus in isolation on that line, it doesn't support Respondent's test because it doesn't mention flight risk. It only mentions danger. It doesn't reiterate all of the bond criteria that Respondent thinks are traditional. Well, maybe. I mean, maybe it could have been a little bit more comprehensive or a little bit more exact about what it was referring to. But it seems to be pretty clear in saying, you know, the kinds of things that you worry about when you worry about releasing people, which is exactly what a bond hearing is supposed to do. Now, it didn't go through all the procedures that Mr. Shah is asking for here today. But again, you know, it says May is ambiguous. That ambiguity allows us to import constitutional considerations. In doing that, we should be thinking about bond hearing type things. You put all that together, it seems like, you know, there's a reasonable argument here that Zedvitas points, you know, pretty straightforwardly in the Respondent's direction. Justice Kagan, even if you thought May was a license to pour in these procedural protections, I still don't think that would get you to the substantive rewrite. So Zedvitas' rule applies across the board to all non-citizens covered by the provision. Once removal isn't reasonably foreseeable, statutory authority runs out. But again here, there's a Clark v. Martinez problem that was not present in Zedvitas. And that is May be detained means one thing when it applies to inadmissible or deportable non-citizens, but it means something different when it applies to flight risk or danger non-citizens. So they're trying to parse this language and apply different rules to different categories. And that's what Clark v. Martinez rejects. And that wasn't present in Zedvitas. And although you mentioned that Jennings involves a different provision, I do think it's instructive because 1226A is the most on-point aspect of Jennings. There, the language is May be released on bond. And the Court said the word May isn't a license to just pour in whatever procedural protections you want. That issue there were periodic bond hearings and clear and convincing evidence requirements, so very similar requirements to the ones that the Court here poured in. And Jennings said that wasn't permissible. Counsel, you're talking about pouring in all of these rewrites. But in essence, and I think this is the question that Zedvitas answered and that Justice Kagan was alluding to, the basic point of Zedvitas is you really can't keep someone indefinitely without a reason, basically. And that reason, I think you would concede, can't be just whim. We don't like this person because it's easy to point to a racial reason, but it could be something as simple as we just don't like them. Is it your position that there is no process by which that type of judgment could be challenged? That is not our position, Justice Sotomayor. We agree that, for example, I mean, there is a robust internal review process here, and obviously a habeas suit would be permissible if the noncitizen wanted to challenge whether he fell within one of the statutory grounds for detention. And to the extent you're worried about indefinite detention. So what you're worried about is that you think that the government has no obligation, except internally, to explain to a neutral arbitrator at a certain point why they're keeping an individual? Because most of what procedures at the Zedvitas hearing that the courts have fashioned, except for the burden of proof, and we can go to that later, are pretty sensical. Government, come in and tell us why you're keeping this person. This is a may. It's discretionary, but there can't be arbitrary and capricious. Explain it. And that, to me, seems like a fairly simple process, not one that we're rewriting, but which is in the nature of the question presented, which is, can you keep them indefinitely? To be clear, Justice Sotomayor, the Zedvitas rule doesn't permit courts to review an exercise of discretion. All it permits courts to review is the statute. But a discretion can't be arbitrary and capricious. And so there has to be a basis for the exercise of discretion. And what these hearings are doing is putting you to that test, isn't it? No, Justice Sotomayor. The purpose of a Zedvitas hearing is to determine whether removal is reasonably foreseeable. And that's just a limit on statutory authority. That's not quite true, because Zedvitas doesn't say you have to let them out if they're a danger to the community. Correct. There is an exception mentioned in Zedvitas for specially dangerous noncitizens. And that's an entirely separate set of regulations. But the basic Zedvitas rule is about statutory authority. And we agree that the question of statutory authority could be raised in a habeas suit here. Respondent obviously hasn't done that, because we clearly do have the statutory authority to detain him. He is inadmissible, which is one of the grounds for detention. And to the extent you're worried about indefinite detention, Zedvitas already solves this problem. Zedvitas says if it's not reasonably foreseeable, you can't detain the noncitizen. That's fundamentally different than what's going on here, because this is detention pending a proceeding, which Damore says has an immigration-related purpose and is not indefinite in the sense that the open-ended detention in Zedvitas was. But what if it still doesn't have a reasonably foreseeable conclusion? I mean, to pick up on one theme of Justice Sotomayor's question, what if the withholding of removal proceedings continued to drag on and on and on? In Zedvitas, there was no country willing to take him, but he was removable. Are you arguing that the Zedvitas right is particular only to that situation, or would you concede that there's some point at which when someone is held in removal proceedings and has sought withholding of removal, that at some point a Zedvitas-type determination must be made? Our position is that Zedvitas is limited to that first situation where it's just open-ended detention. Zedvitas does not apply to detention pending a proceeding. I think Damore makes this pretty clear. But we would acknowledge the possibility of an as-applied constitutional challenge in extreme circumstances. So if the detention went on and on, as you say, if the government were seeking continuances, if the government were responsible for the delay, there would be a host of factors that a court could potentially consider, and the lower courts are actively considering these kinds of claims. We would acknowledge that might be permissible. I don't understand, if I can interrupt for a second. I mean, this individual here has applied for staying here for asylum. Isn't that what it is? No, Justice Breyer. This is a withholding-only determination. He has no opportunity to have a legal entitlement to be in the United States. This is not an asylum application. He's subject to a final order of removal, and that's not going anywhere. And he's not said that he's going to be persecuted, and maybe I have the wrong case here. So he has asserted the likelihood of persecution, but this is a withholding-only proceeding, which means the only form of relief he has the ability to apply for is withholding under the Convention Against Torture. All right, so withholding of removal. So he wants to withhold removal, he stays, right? He does not obtain a legal entitlement to stay. I don't know if he's here or does he go to Mexico, if, in fact, they're going to kill him when he gets to Mexico. He will not go to Mexico, but we retain the discretion to remove him to another country. Yeah, you do. Okay. And I would like to know when you think, as far as the record is concerned or anybody else, he's going to reach, you're going to reach a decision as to whether he gets to stay in the United States until you find another country. And how long is it before you're likely to find another country? Justice Breyer, so his withholding-only proceedings are still ongoing. He has not obtained that relief. I ask you for an estimate by the government as to when the government is likely to find a place, I don't care what place, any place in the world besides the United States, where you will send him. The likeliest place that we will send him, Justice Breyer, is to Mexico. And I ask you when it is likely that the government will reach a final decision on that. So he's currently on the non-detained docket, Justice Breyer, which moves much more slowly. I'm asking you for an estimate. I know these are difficult to make. I'm not trying to be difficult. I want to know, as far as you know, when do you think he will be finally sent out of this country? His next withholding-only hearing is scheduled for 2023, which is on the non-detained docket. Oh, I see. That's about a year or so. Now, frankly, it's rather hard for me to see the difference between the person who they were trying to send to Cambodia, I think, and finished his jail sentence in Zadvydas. And we said, yeah, hey, fine, go look around for a country for six months or so. And if you can't find a country and there isn't one right on the horizon, let him out. Now, there are exceptions. A lot of analogies to bail. Okay. Why wouldn't that same thing apply here? I mean, that's what it said, same situation. Justice Breyer, with respect, I don't agree that it's the same situation. Because? This is detention pending a proceeding, which Damore says. Well, so what? Damore says that it is fundamentally different from open-ended detention in Zadvydas. These same arguments were made by the dissent in Damore and rejected. And dissent says that. I mean, Damore overruled Zadvydas. No, Damore did not overrule Zadvydas. It dealt with a different situation. I didn't think it did, either. Hmm? Or if I decide that they are the same, then we should have the same result, right? If you want to overrule Damore, I think that would require overruling Damore. Well, I don't understand the difference between Damore and Zadvydas on your theory. The difference, Justice Breyer, is that Damore dealt with detention pending proceedings. So there's a logical termination point. Well, there's a logical termination point in Zadvydas when they send him to another country. Has he actually obtained withholding relief? Because there would be a distinction, right, between proceedings that are dragging on when he has not yet been said to qualify for withholding of removal. And then if he is, I think, you know, Justice Breyer's point about the similarity between this situation and Zadvydas would be most acute if he were determined eligible for withholding, but you couldn't find a country besides Mexico that would take him. Correct, Justice Barrett. We agree with that. If he were to obtain withholding-only relief, he would be in Zadvydas land. So before he obtains that, you can keep him in jail for 50 years. Is that your response? No, Justice Breyer. The general rule under Damore is that we can keep him in detention pending his proceeding. But as I discussed with Justice Barrett- Was Damore, Mr. Raynor, and I might be wrong about this, was Damore the one where the Solicitor General provided wrong information to the court and basically the court was operating on a false understanding of how long some of these detentions lasted? You're correct, Justice Kagan, that the Executive Office for Immigration Review later provided updated statistics to this office, which we provided to the court in Jennings. So when Damore said that, when Damore said, look, it's pending a proceeding, Damore was thinking of a proceeding that was going to happen pretty soon. And I think the question here is what if we're in a different situation than that? What if, in fact, it's not going to happen pretty soon, 2023? We just started 2022. That's a year away. He's already been detained for some time. I mean, now we're talking about, you know, some significant time. And I'm not sure it quite matters to the person who's in detention whether you're in detention because they can't find a country or whether they're in detention because the immigration system is backed up. I think that, Justice Kagan, Damore, its front-line position was that detention pending proceeding is different. And then it adverted to the statistics, which were later modified, although not in significant respects. Here, even if you wanted to focus on the empirical aspect of this, the data that Respondent has submitted just suggests there's not a big problem here. About 80 percent of these noncitizens don't appeal IJ determinations from withholding-only proceedings, and they're detained for an average of 114 days according to Respondent's data. And then even if you look at the entire category of noncitizens, some who appeal, some who do not, still the average length of detention is 157 days. And both of those numbers are well below the six months that Zadvydas found presumptively reasonable. So we don't- Thank you. No, no, thank you. That's very helpful. And I think that's what Damore thought, that all these people are released within six months anyway. Those are the figures the SG gave us. So that's not a problem. But here you're telling me that maybe this person is going to be 2023 before he gets a hearing. That's much more than six months. Let me ask you a different question as to what kind of proceeding you ought to have if you can't keep the person there forever and you're going to keep him for more than six months or more than eight months or something. What Zadvydas actually says, and this is still true, it's in the CFR, it says the sole procedural protections available to the alien are found in administrative proceedings where the alien bears the burden of proving he is not dangerous without, the government says, any significant later judicial review. And then there's some cites, et cetera. And then it says the Constitution demands greater procedural protection even for property. And the serious constitutional problem arising out of a statute that in these circumstances permits an indefinite, perhaps permanent deprivation of human liberty without any such protection, which means an independent body deciding it or an independent person and no burden of proof against the individual is obvious. The constitutional problem is obvious. That's what Zadvydas says. So what I don't see is how can the government, given that language in Zadvydas, continue to say, oh, yes, whether it's the Zadvydas type case or anything else under A6, continue to say, oh, we will give you a hearing. Oh, well, not quite a hearing. Well, you have the burden of proof. And, well, there is no judicial review. I can't find an analogy for such a thing in habeas corpus law or in bail law or in any other detention law. I'm not wedded to what it sounds as if I am, but I'm saying this because I want to hear what you say. Justice Breyer, you're correct that 241.4, which is the post-order custody review regulations, as well as 241.13, which are the Zadvydas regulations, both provide purely for an administrative review process. But that doesn't mean that the noncitizen couldn't see capious review of statutory authority. So if the noncitizen thinks, for example, that removal is not reasonably foreseeable, that is a statutory limit on our authority, and he can file a habeas suit for that, just like he did in Zadvydas. Similarly here, if he thinks he's not within one of the four grounds of detention, he can file a habeas suit. He's not going to do that because he is within the four grounds of detention. There's no dispute. He is inadmissible. Congress has authorized his detention. So I think this goes back to what I was saying earlier to Justice Kagan, which is that a critical piece here is that Moore process doesn't do him any good. He has to rewrite the substance of the statute in order to get relief. He has to delete the first two grounds for detention. And that's what he can't do. And both to Moore and Reno v. Flores, this court says that detention pending proceedings is permissible so long as it has a rational relationship to a legitimate government process. All right. I'll talk to this once last time. I'm not worried about why do you say delete the ground. What Zadvydas seemed to say was, fine, you have good grounds for holding the government. Hold him. You're thinking of sending him out of the country. We'll see if you can do it and do it if you can. But while you're deciding that, don't keep him forever in jail without a bail hearing. I mean, maybe it's six months. Maybe it's five months. Maybe it's seven months. Or maybe it depends upon how likely it is that you will reach a final decision soon. As I read Zadvydas, that's all it says. And I don't see why that wouldn't apply to all the grounds under A-6, since A-6 has language that's open to that. It uses the word may, not the word shall, as is true of Rodriguez and et cetera. That's really the basic question in my mind. Justice Breyer, Zadvydas does not entitle a noncitizen to a bail hearing about flight risk and danger to the community. The only thing Zadvydas entitles a noncitizen to is a hearing about whether removal is reasonably foreseeable. And Zadvydas quite pointedly says that you can detain someone until removal is reasonably foreseeable. Thank you, Counsel. Justice Thomas. Justice Breyer, anything further? No, thank you. Justice Alito. Justice Kagan. Justice Sotomayor. One question, Counsel. You said that the next hearing in this case, in this particular petitioner's case, was scheduled for 2023. But earlier you said that the average detention rate is below the six months. But that's not true. Average means that it's true for a lot of people, but it's not true for a lot of people as well. As I understood some of the figures I reviewed, when you talk about reasonably foreseeable, some of these proceedings can last years and years, couldn't they? It is possible. But, Justice Sotomayor, I just want to clarify, his current hearing date is because he's on the non-detained docket. That hearing date was set after he was released on bond. So when he was still in detention, his hearing was much more imminent. But it is true that the non-detained docket moves more slowly. You keep talking about an individual challenge is adequate to protect the rights of these individuals. Most of these non-citizens are overwhelmingly non-lawyers. And for virtually all of them, English is not a first language. Most of them are impoverished. And without the ability, given that the only opportunity they have is administrative, and so they're unlikely to be represented by lawyers, how are these aliens, without the help of the courts and lawyers, supposed to protect their rights? Justice Sotomayor, the regulations provide for an interpreter if the non-citizen needs it. The non-citizen is entitled to be represented if he so chooses, and the non-citizen can submit information. They're not entitled to lawyers. They have to go find one. It is correct that the government does not pay for lawyers in this context, but that's obvious. It's hard to see how impoverished people, unfamiliar with the workings of this government, of this country, are going to find lawyers. It seems like a phyrrhic offering to say that an individual hearing is of any benefit to them counsel. Justice Sotomayor, I don't think Respondent agrees with that. Respondent thinks an individual hearing is very important. Respondent is represented, and Respondent hasn't suggested the absence of government-funded counsel is fatal to the system here. Justice Kagan, anything further? Justice Gorsuch? Justice Kavanaugh? Justice Barrett? No? Thank you, Counsel. Mr. Shah? Mr. Chief Justice, and may it please the Court, Zedvedos interpreted the exact same statutory provision at issue here to require release, subject to conditions of supervision, not outright release, when, after six months of detention, there is no significant likelihood of removal in the reasonably foreseeable future. That is exactly the position my client was in. DHS determined that Mr. Arteaga-Martinez had demonstrated a reasonable fear of torture if removed to his home country, a threshold standard that only 13 percent of applicants satisfy. That determination entitled him to immigration court adjudication of his claim for relief, which often takes a year, or is in this case much longer, during which time he cannot be removed. After six months of detention, without any independent review, he had not yet even received a hearing on his withholding claim, let alone a decision or subsequent appeals, at the end of which he might not be removed at all. Now, three years later, the government still seeks the power to imprison him, despite his significant family ties and lack of any criminal record, pending his bonafide yet still unadjudicated withholding of removal claim. Section 1231A.6, as definitively construed in Zedvedos, forecloses his unchecked prolonged detention. The government responds that Zedvedos dealt only with the risk of permanent detention. Although that risk certainly raised due process concerns motivating the court's statutory construction, its construction was not limited to that extreme scenario. Section 1231A.6 prohibits continued detention after six months, whereas here there is, quote, no significant likelihood of removal in the reasonably foreseeable future, end quote, not at just some point ever. As Justice Scalia, who dissented in Zedvedos, confirmed in Clark v. Martinez, that same construction must apply to all noncitizens subject to Section 1231A.6, including Mr. Arteaga-Martinez. I welcome the Court's questions.  Counsel, you didn't mention 1231H. How do you get around that? Sure, Your Honor. Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person. Sure. A couple responses on 1231H. First of all, that provision was also raised in Zedvedos, and this Court rejected its application. It rejected its application because what 1231H is doing is it's saying you can't have some separate use this statute to create some implied cause of action. Here we're not talking about any implied cause of action. This is a habeas claim. And so habeas is how he got into court. And now the question is, can you just enforce what the statute says? And of course the answer is you can enforce whatever limits are within statute. Now, what the statute says? Or how the statute has been construed by this Court in Zedvedos. And what this Court said in Zedvedos is even though it read a substantive limitation you can't detain after six months, 1231H is in a bar. 1231H applies equally to substantive or procedural limitations. That's the exact text of 1231H. So if 1231H worked in ñ did not work in Zedvedos, it cannot work here. And by the way, the ñ the statute has been construed to create a substantive or procedural right, and it was defined in Zedvedos. So you think because it was done in that respect in Zedvedos that all bets are off and that 1231H essentially has been read out of the statute books? Two responses. First of all, Your Honor, this Court did reject the 1231H argument in Zedvedos. It has to apply equally here because the 1231H applies equally to substantive or procedural limitations. Point number two is we haven't read it, neither this Court ñ because the statute says you can't create substantive or procedural limitations. Correct. And what did it do in Zedvedos? Which of those types did it provide? Well, the government describes Zedvedos as a substantive, right, a substantive decision, put a substantive limit on detaining after six months of detention. So what I'm saying here, the Court rejected 1231H, and the government says, well, this case is different because it's procedural limitations. But 1231H applies equally to substantive or procedural limitations. So if the Court said ñ Well, did it in Zedvedos? The Court rejected it. It said it doesn't apply. But both substantive and procedural? Well, Zedvedos ñ I mean, when I'm looking at it, I mean, if ñ obviously, the force of Zedvedos is central to the discussions here. Yes. And I'm wondering if Zedvedos ñ if you think that Zedvedos should be limited as opposed to Zedvedos should be overruled. My question is, how do you distinguish the applicability of 1231H? And you're saying, well, Zedvedos did this. But how much of 1231H did Zedvedos ñ one might ñ your friend on the other side might say obliterate. The others, you presumably would say construed. Right. So if we're talking about 1231H, the bar provision, as I said, this Court rejected its application. But it didn't read it out of the statute what 1231H was designed to do. And this is explained in the legislative history of 1231H. It was specifically ñ No, it gets better. But go on. It specifically was enacted to address the Ninth Circuit's use of mandamus at that time to require the government to do expeditious removal of aliens, because the predecessor to this statute had language that said expeditious removal. And what Congress did is say, we disagree with that Ninth Circuit practice of using mandamus to enforce this limitation, what the Ninth Circuit had perceived as a limitation. So we're not reading 1231H out of the statute. 1231H still does work. You can't use it as an implied cause of action to willy-nilly enforce the statute. This is a habeas petition, just like in Zedvitas. And habeas, of course, you can enforce the statute. That's the purpose of habeas. So I don't think 1231H does the government any good here. I think the central point here is the one that Justice Kagan made when questioning the government, which is this statute has already been construed the test, and this is at page 701 of Zedvitas. The test is crystal clear in interpreting 1231A6. Here's what the Court says. Quote, after the six-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence or release him subject to conditions of supervision. That is precisely the situation. In Clark v. Martinez, this Court said that provision, even though it was written with the Zedvitas-type petitioners, it has to apply to all people subject to 1231A6 because that was a statutory construction. Certainly, the Zedvitas petitioners are one class of people whose removal was not reasonably foreseeable after six months of detention. My client is yet another example of someone who there was no significant likelihood of removal in the reasonably foreseeable future after he had been detained at six months, and that is because he had not even been given a hearing while detained. We're not talking about the non-detained docket. We are talking about detained. He had been detained for six months. The government had not given him a hearing on his withholding claim. There is no chance he could have been removed in the reasonably foreseeable future because you can't remove him until he has a hearing, has an IJ decision, has his BIA appeal. We are talking months, if not years, until that happens. Kagan. Mr. Shah, this argument that you make, and it's the first argument you make in your case of removal, was that the way this case was presented below? Has anybody, has any other court had an opportunity to deal with the claim as you are making it now? Your Honor, it wasn't pitched in this way below, and that's because of the procedural posture of this case. How this case came up to the Third Circuit, it came up on an unopposed motion filed by my client for summary affirmance after he had already been released. The government didn't oppose it because of binding Third Circuit precedent. So what happened here, he's already been released on bond. He files an unopposed motion for summary affirmance. The government consents. He has then continued to be on release, so there wasn't any occasion to kind of air out any of these arguments, actually, because it was an unopposed motion of summary affirmance. So the answer to your question is no, it wasn't fleshed out below, but none of this was. Yeah. So for whatever reason, if it wasn't fleshed out below, and it sounds awfully factual, the way you are making it, and not the kind of thing we usually do to decide a pretty fact-bound question that's never really been addressed by anybody else, what does that suggest? So I guess two responses. First, let me just address the predicate of the question that it's fact-bound. Your Honor, I don't think it's really all that fact-bound because the question is, again, the test is significant likelihood of removal in the reasonably foreseeable future. Nobody, not even the government, can get up here with a straight face and tell you after six months that his removal would happen in the reasonably foreseeable future, however you want to define reasonably foreseeable future. He hadn't been given a hearing, let alone an IJ decision, let alone a BIA appeal. We know from Zedvitas this Court's opinion said it's presumptively unconstitutional after six months. We know that at the six-month point, we are talking months, if not years, before he could be removed. So it's not really factual at all because if reasonably foreseeable means anything, it has to mean at least within a year. And the government cannot say, Justice Breyer asked him, even on the detained docket, and we have statistics from through 2015, if you talk to any immigration lawyer, those numbers have skyrocketed since then. The government has that data. It hasn't disclosed it. We can ask them again. How long does it take? Well, can I ask you a question about that, Mr. Shah? Because when I asked Mr. Rayner about proceedings that would drag on like this, he said, well, the government doesn't rule out, in fact, accepts the possibility of as-applied constitutional challenges to extended detentions of the sort that you're identifying. So could you have brought that kind of challenge, and do you think it would have succeeded? And if so, why didn't you? Well, Your Honor, we are here on an as-applied challenge. This challenge was brought after six months of detention. It's an as-applied challenge to his continuing detention. Now, it can't be the case, Your Honor, the test is, at the six-month mark, is there a significant likelihood of removal in the reasonably foreseeable future? Again, there is no one could argue that there was a reasonably foreseeable prospect of removal in the reasonably foreseeable future. That was his as-applied challenge, and it should be granted. There isn't any magical – No, it's the statutory provision that was – that's a statutory test that this Court used constitutional avoidance in light of due process concerns to interpret 1231A6. But I guess, unless I misunderstood what Mr. Raynor was saying, I thought I understood him to be saying that there could be an as-applied constitutional challenge, that at some point it would violate your client's constitutional rights. Sure. If the government could keep him locked up for years, and you denied the statutory claim, perhaps after some indefinite time that the government believes has to be close to permanent detention, perhaps you could bring an as-applied due process challenge that he's been locked up years. But you shouldn't have to be wait – you shouldn't have to wait until you're locked up for years. Under Zedvitas, the six-month mark is when you can bring the claim, and if there's no significant likelihood that you're going to be removed in the reasonably foreseeable future – How are you defining reasonably foreseeable future, and on what are you basing that? Sure. So I think the best place to look is Zedvitas itself. And what Zedvitas says is, well, is 90 days when it's presumptively unconstitutional? Is it six months? And Zedvitas takes the longer limit, right? At page 701 it says, we're going to presume that six months is when it's presumptively unconstitutional, but we're not going to hold that court – the government to that rigid line, because we realize that sometimes removal isn't in the works. So we're going to ask, after the six-month period, is there a significant likelihood he'll be removed in the reasonably foreseeable future? And then the next sentence says, that period shrinks as the detention grows longer. So I think the one thing, Justice Kavanaugh, that we can safely say – In terms of the lower courts, if we are fleshing out reasonably foreseeable future, I think there could be chaos unless we say something more specific. And what would you advise, and on what are you basing that? Sure. Okay. So two things. One thing I think what you can safely say is, reasonably foreseeable has to be less than six months, because the court already set the presumptive constitutional line at six months, and then said we're going to allow a residual buffer. So it would be weird to think that the reasonably foreseeable period can be longer than the presumptively constitutional period. That's one possible line. But the other line you could adopt, which is clear as day, as applied to our client, is when you are in withholding of removal proceedings, which, again, often take years, if you had not even had a hearing by the time of the six-month mark, then you satisfied that test. That is a bright line that would apply in a lot of these cases, because as the government can tell you, you can ask them, how many of these people get hearings by the six-month mark? The answer is not very many today, if you talk to any immigration lawyer. So that is another bright line. If they haven't even had a hearing on their withholding of removal claim, let alone an IJ decision, let alone appeals, they're not going to be released in the reasonably foreseeable future. One of the government's arguments is that these procedural requirements that you are reading into the statute would violate Vermont Yankee. And you didn't respond to that. Do you have a response to it? Your Honor, yeah. So I guess two things. One is, now we're not talking about the antecedent argument. I think we're talking about the bond hearing argument. Our bond hearing argument, Your Honor, just flows from the other part of the Zedvitas decision. Putting aside all other kind of reading in implicit limitations and all of that, if you just look at Zedvitas at page 700, what it says is this. And we've now been arguing mostly about the holding that says, if there's no significant likelihood of removal in the reasonably foreseeable future, which, again, I don't think there's any argument that we're not in that box. But if we're not in that box, then the question is, even if removal is reasonably foreseeable, then what happens? Well, I'm not sure I really understand your answer. We took this to decide about bond hearings and about the clear and convincing evidence standard. Are those requirements consistent with Vermont Yankee? So, Your Honor, here's what I guess my response is. Here's what the Court said. If removal is reasonably foreseeable, so we're assuming we're in that second box, the habeas court should consider the risk of the aliens committing further crimes as a factor potentially justifying confinement within that reasonable removal period. So I would just ask that this Court apply that part of Zedvitas if you disagree with me somehow that we're not in the reasonably foreseeable removal box. And then the question is — So you read Zedvitas to alter what the Court said in Vermont Yankee? Well, Your Honor, I don't view it as altering or not. I think it's a separate sort of inquiry here. We're in a habeas court. The habeas court has to — and the Court specifically talks about the Court making this inquiry, resolving, looking at, in order to justify continued detention, those factors. So I'm not sure how you — I don't — I think you just apply in a case that's directly on point, you apply those circumstances. I guess that would be my response. And, Justice Kagan, I never finished my response to your question because I was fighting the predicate that there had to be factual development. But you asked me, okay, look, if you decide this is too messy to decide, well, the right thing to do is not, as the government suggests on page 12 of their reply, just to remand this issue to the Third Circuit to decide. But I think you would have to dig the case because it doesn't make sense to decide the logically downstream issue of bond hearings and all the procedural requirements that might go into that without deciding the logically antecedent question is, do they satisfy the main test of Zedvitas? There is no significant likelihood of removal in the reasonably foreseeable future for a client — for someone like my client. You have to decide that first before deciding the downstream question about bond hearings. So to answer your question directly, I think if the Court is not inclined to decide that logically antecedent and, to me, slam-dunk inquiry, if the Court isn't inclined to decide that, then I think it should dig both this case and the Alleman-Gonzalez case, because in neither case was this threshold issue litigated because of the unique posture of how those cases came to this Court. Roberts. Well, Mr. Shah, if we do decide the downstream issue before the subsequent, it would hardly be the first time, and it's not necessarily an inappropriate use of our certiorari jurisdiction to resolve downstream disagreements or other reasons for cert while not addressing upstream ones. We do that, I don't want to say all the time, but no one is shocked when it happens. I think, Your Honor, I think there's a couple especially good reasons not to do that here. One is because what you say in the downstream — resolving the downstream issue, it's hard to do that without thinking about the upstream issue, if you will, about whether there is a significant likelihood of removal in the reasonably foreseeable future. Because, again, those two inquiries in Zedvitas are connected, right? It was — they're in the same paragraph, they're logically connected, and it's hard to put yourself — to assume you're not even going to think about that before deciding the bond hearing question. The reality is there was no — not even close to a significant likelihood of removal in the reasonably foreseeable future when you haven't had a bond hearing. And then to decide what the procedural protections are, if you artificially assume that he could have been removed in the reasonably foreseeable future, I think is a difficult inquiry to undertake. And I would — I would also mention that the Sixth Circuit, at the time this court — the government filed its petition, there was no circuit split. There were only two circuits that decided this issue. Since then, to my knowledge, only one other circuit has come into play, even on the bond hearing issue. And so I think these entire slate of issues would benefit from further percolation and development if this court isn't going to decide the logically antecedent issue. And, in fact, the dissent in the Sixth Circuit case adopted our view of reasonable foreseeability, that if you haven't had a hearing at six months, you can't say that there's any likelihood, let alone a significant likelihood, of release in the reasonably foreseeable future. We're talking about years — Mr. Shaw. — years here. Another upstream issue for you. Yes. What is the status of your client? Has he, in fact, received a bond hearing, and is he, in fact, at liberty currently? Yes, Your Honor. So what happened, Your Honor, is after the six-month mark under the Third Circuit's precedent, he did receive a bond hearing. He was released. The government never appealed his release, by the way, and so he has been free under supervised conditions of release since that time. So I certainly understand we have similar issues in the next case where we have someone who is currently being detained, as I understand it. But with respect to your client, does that moot his claim? And if not, why not? I don't think legally it moots the claim, Your Honor, because the government still seeks the power to re-detain him. And so if you were to rule against us, in the government's view, it could simply put him back into custody. And so from a legal standpoint — I understand that. But normally we ask about how speculative that would be. And so we would have to speculate, I think, that the government would detain him, or we would have to have some assurance he is likely to be detained again and that he would be held for more than six months without another bond hearing having already received one at six months. Well, the six-month limit — Is that a bit of a — Sorry, Your Honor. No, I'm just curious. Is that under our precedence in terms of how speculative something has to be for it's moot or not moot? Where does that fall on the line? So, Your Honor, I don't think it is actually a mootness problem because, again, I think from the government's standpoint, this is a question of their power and they exercise their discretion. Either way, in all sorts of cases, perhaps that might be better directed to the government. But what I will say is it's not a question of whether he'll receive a bond hearing within six months. It's whether he'll receive a hearing on his substantive claim for withholding relief. And I don't think that's at all certain that he would get that within six months given the backlog in the immigration courts, even on the detained docket. But you have no information that he's likely to be detained again or that he wouldn't receive at least a bail hearing again if he were detained after six months? Your Honor, under the government's view, that would be purely within their discretions, and I don't know how they would exercise their discretion. Thank you. The one other point I want to make is about DeMaury v. Campbell. I'm sorry, counsel. I think your point is if the court rules in the government's favor in this case, there will be no opportunity for a further bond hearing, correct? Correct. The government has made clear that it does not believe... Well, to be clear, I understand that. My question to you was not if we rule in the government's favor, but whether we should rule in this particular case as opposed to the next one. You understood that, right? Yes, Your Honor. Thank you. The one other point I would make is about DeMaury v. Kim. One of the issues that DeMaury v. Kim is now somehow more on point than Zedvitas. First of all, DeMaury v. Kim dealt with a different statute, 1226C. And that's fundamentally important because that dealt with mandatory detention of criminal aliens. Congress, and this is heavily... This is the main rationale in DeMaury v. Kim. There are two rationales in DeMaury v. Kim for allowing that detention. One is Congress had made the categorical judgment that criminal aliens were too dangerous to release. One major distinction. Second major distinction is the period of detention. The court functioned on the premise that in the vast majority of cases, these people were detained less than two months, about a month, a month and a half. And in the outer limit case, they were detained at five months. So they didn't even hit the presumptive unconstitutional line that this court set up in Zedvitas. So I don't see how DeMaury v. Kim is even in the ballpark of why we would be talking about it because Zedvitas kicks in only for people who have been detained longer than six months. That is not the DeMaury class, the class of criminal aliens that Congress had categorically said we can't release because they're a danger to society. Here we're talking about 1231A6, a statute that has discretionary detention, and here we're talking about my client who has no criminal record at all. If there are no... Mr. Shaw, I suppose that this court thinks about Zedvitas as, you know, a precedent that needs to be applied, but not one that is altogether comfortable and should not be extended. I mean, suppose that that's the view of Zedvitas on this court. What does that suggest about your case? You know, is even the preliminary argument you make, let alone the second argument, an extension of Zedvitas? If not, why not? Your Honor, I am not asking this court to extend Zedvitas one millimeter. And Clark v. Martinez, this court was situated in a very similar place. It was not fond of Zedvitas at that time. Justice Scalia wrote Clark v. Martinez. He dissented in Zedvitas. And what he said is this, is like it or not, and whether you disagree with it or not, Zedvitas construed 1231A6. And you cannot pick and choose. It's ironic that the government invokes Clark v. Martinez because it is categorically violating Clark v. Martinez, saying that it only... that Section 1231A6 interpretation of Zedvitas only applies to people who did like Zedvitas. Clark v. Martinez says no, it applies to all people who fall within 1231A6 because it's a statutory construction. So what I'm asking you to do, Justice Kagan, what I'm asking this court to do is not revisit Zedvitas at all, not extend it at all, but apply the test that is set out in black and white at page 701 of Zedvitas. This is the core holding of Zedvitas. At the six-month period, once the alien provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence or release them subject to conditions of supervised release. What about the burden of proof, the clear and convincing? Well, Your Honor, under this inquiry, that would fall away. The burden of proof is just this, the alien has to provide good reason to believe there is no significant likelihood of removal and then the government has to rebut it. And so we accept that in that situation, under the logically antecedent argument, we have to show a good reason of no significant likelihood of removal in the reasonably foreseeable future. But we've amply met that here, given that he had not even been given a hearing on his substantive claim at the six-month mark. There is no chance, not even a significant likelihood, there is no chance he could have been removed in the reasonably foreseeable future because the law bars you to be removed until you've gotten a hearing, an IJ decision, and a BIA appeal. So we're talking comfortably months, if not years, from that six-month mark. So, Justice Kagan, hopefully I've answered the question. So I think you did answer it as to your primary argument. I think what Justice Barrett may have asked you about is your secondary argument and suggesting that the clear and convincing evidence standards, some of these other procedures that have been articulated by the Ninth Circuit, that that goes beyond what Zedvitas said. As to the second category of people. Sure. So as to the bond hearing-related argument, I don't think the core of our argument has to do with the burden of proof and clear and convincing evidence, which I agree with you is not articulated in Zedvitas. Quite frankly, Your Honor, I don't think this Court has to reach that issue because the government has never argued that the bond hearing, in our case, turned on whether it had a clear and convincing burden of proof. The government didn't even submit a brief in opposition to the bond hearing. It didn't even appeal our client's release on a bond. Clear and convincing had nothing to do with it. He had no criminal record, and again, the government didn't contest it in writing or on appeal.  And as we know, in the vast majority of statutes which don't set forth a burden of proof, courts figure it out. And so I don't think the Court has to reach that. I think the core part of the second argument, the bond hearing requirement, is the requirement of a neutral adjudicator in that adversarial hearing. That's the core part of that. And Zedvitas does speak directly to that at page 700 when it says, even if you assume removal were reasonably foreseeable, unlike in this case, but even if you were to assume removal were reasonably foreseeable, then the Court should consider the risk of aliens committing further crimes as a factor potentially justifying continued confinement. And so that's the part of Zedvitas that I think you would be applying if you were in the logically downstream argument of bond hearings. Thank you, Counsel. Justice Thomas. Mr. Shaw, would you prevail had Zedvitas not been decided? Your Honor, if this Court – if Zedvitas had not been decided, I think we would need the Court to embrace the same holding that Zedvitas did reach in order for us to prevail, at least under our logically antecedent argument. It's built directly upon this Court's holding in Zedvitas. So, yes, the answer to your question is, our argument does depend on applying Zedvitas as it was written. So you would have to make the Zedvitas arguments under the statute but for our precedent? Yes, Your Honor. If this Court were to overrule Zedvitas, we lose. But, of course, the government has not asked this Court to overrule Zedvitas. It has asked this Court to apply it just as we do. Thank you. Justice Breyer, anything further? No. Justice Alito? Justice Sotomayor? No. Justice Kagan? Justice Gorsuch? Justice Breyer? No. Thank you, Counsel. Thank you, Your Honors. Rebuttal, Mr. Rayner? Thank you, Mr. Chief Justice. I'd like to begin just by focusing on the two different arguments in this case. The argument on which we sought certiorari and which the lower court ruled on was the argument that after six months of detention, a noncitizen is entitled to a bond hearing at which he can prove that he's not a flight or at which the government has to prove that he's not a flight risk or he is a flight risk or a danger to the community. Now, the respondent has virtually abandoned his defense of the Court of Appeals decision on that point. His entire presentation ignored that argument and focused on a new argument that they interjected at the merit stage in this Court, that under a straightforward application of Zedvitas, removal is not reasonably foreseeable. That argument is procedurally barred. They didn't file a cross petition, and it would derail this Court's consideration of the QP. It is a narrower argument. It is specific to noncitizens and withholding only proceedings, and it would not allow this Court to decide the broader question that it granted cert on and that we sought cert on about the Third Circuit's ruling that all noncitizens covered by Section 1231 are entitled to a bond hearing. Setting aside the fact that it is procedurally barred, it's also incorrect on the merits. Removal here is reasonably foreseeable because this is detention pending proceedings. This is just fundamentally distinct from the open-ended detention in Zedvitas. If this Court were to hold that Zedvitas applies to detention pending proceedings, that would be a watershed ruling in immigration law. Detention pending proceedings is common in immigration. We have 1225B. We have 1226A. We have 1226C. We have 1231 as it applies to withholding only noncitizens. And if the Court were to import Zedvitas to that realm, it would upset all of these statutory frameworks. Respondent has suggested that if the Court is not willing to decide his new argument, it should dig the case. With respect, that's a preposterous argument. The Court sought cert on a question. Excuse me, the government sought cert on a question. This Court granted cert on the question. Respondent should not be able to come in and derail the consideration of that question with an altogether new argument. Lastly, I just want to speak briefly about Damor. Respondent suggested that Damor is not on point because it dealt with criminal noncitizens and Congress had before it findings about criminal noncitizens. But here, I think it's important to remember that Congress also had good reasons for treating this category of noncitizens differently. Just as in Damor, Congress had good reasons for treating those noncitizens differently. In Guzman-Chavez at page 2290, the Court says precisely this. It says, look, 1231 applies only to noncitizens with final orders of removal. Categorically, they have a heightened flight risk because they lack any meaningful opportunity to obtain the legal entitlement to be in the United States. And that is especially true with respect to the narrower class of noncitizens at issue here, which are those in withholding only proceedings with reinstated removal orders. For people like Respondent, they were already removed. They were already subject to a removal order. They illegally reentered the United States. That is a statutory condition for reinstatement. You only get reinstatement if you illegally reenter the United States. And then once back in the United States, they were apprehended again and ordered removed again. We know by definition those noncitizens pose a greater risk of flight based on their past conduct. Can I ask one question? Yes. You said the reasonably foreseeable standard doesn't work in this detention pending proceedings context would be watershed and upend immigration system. Can you explain that, spell that out a little bit? Yes, Justice Kavanaugh. So as we discussed, in Damore, court says detention pending proceedings is just a different beast than open ended detention. And detention pending proceedings is very common in the immigration system. There's a host of different provisions that allow for it. And this court addressed several of them in Jennings. 1225B allows for detention pending proceedings for a certain category of noncitizens. 1226 allows for detention pending proceedings. 1231 is a mixed bag for Zadvida's category noncitizens. They don't have any pending proceedings. But for people like respondent who are in withholding only proceedings, that is detention pending a proceeding. So in Jennings, it's a good example of this. The court didn't talk about Zadvida's. The court didn't suggest that Zadvida's was a limitation. The court didn't even reach the constitutional concerns in Jennings. It just stuck with the text and it stopped with the text being unambiguous. And we submit that the court should do the same thing here. Thank you, counsel. The case is submitted.